```
              UNITED STATES DISTRICT COURT FOR THE
                WESTERN DISTRICT OF NORTH CAROLINA
                       CHARLOTTE DIVISION
                        3:04CV168-V-02
                         (3:01CR31-14-V)
```

```
GARY HARRIS,                     )
      Petitioner,                )
                                 )
           v.                    )      O R D E R
                                 )
UNITED STATES OF AMERICA,        )
      Respondent.                )
_____)
```

**THIS MATTER** is before the Court on the petitioner's original and amended Motions to Vacate under 28 U.S.C. §2255, filed April 9 and August 4, 2004 (documents ## 1 and 7); on the government's original and amended "Answer[s] To Petitioner's Motion To Vacate . . . And Motion For Summary Judgment," filed July 12 and November 22, 2004 (documents ## 5 and 11); and on the petitioner's so-called "Second Traverse To Petitioner's [sic] Amended Answer To Petitioner's Motion To Vacate . . . ," filed December 13, 2004 (document #13).

For the reasons stated herein, and for the further reasons set forth by the government in support of its Motion for Summary Judgment, the government's Motion will be granted; and the petitioner's Motion to Vacate will be denied and dismissed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

According to the record of this matter, on July 11, 2001, a Superceding Bill of Indictment was filed under case number

3:01CR31-V, charging the petitioner (and 13 other individuals) with various federal offenses, including conspiracy to possess with intent to distribute, and to distribute 50 grams or more of cocaine base and 5 kilograms or more of cocaine powder within 1,000 feet of certain protected areas, all in violation of 21 U.S.C. §§841 and 846. Also on that date, the government filed a "Supplemental Information Pursuant to Title 21 U.S.C. §841(b)." By that Information, the government reasserted that the charged conspiracy had involved 50 grams or more of cocaine base and 5 kilograms or more of powder cocaine.

On March 4, 2002, the petitioner appeared before the Court and pled "not guilty" to the conspiracy charge, and then demanded a jury trial. However, on April 26, 2002, the petitioner entered into a written Plea Agreement with the government. By the relevant terms of that Agreement, the petitioner agreed to plead guilty to the conspiracy charge as set forth in the Indictment. Furthermore, the parties' Agreement explained that by virtue of the petitioner's guilty plea, he would face a sentence of no less than 10 years and not more than life imprisonment.

The parties' Agreement also reported the petitioner's understanding that "the Court ha[d] not yet determined the sentence, that any estimate from <u>any</u> source, including defense counsel, of the likely sentence [was] a prediction rather than a promise, and that the Court ha[d] the final discretion to impose any sentence up

2

to the statutory maximum." The Agreement also included a stipulation that the amount of cocaine base which was "known to or reasonably foreseeable by the defendant"--that is, the amount of cocaine base for which he was to be held accountable, was "in excess of 1.5 kilograms.

On July 11, 2002, the Court held a Plea & Rule 11 Hearing. On that occasion, the Court engaged the petitioner in its standard lengthy colloquy to ensure that his guilty plea was being knowingly and voluntarily tendered. During the course of that proceeding, the petitioner swore that he had seen a copy of the Indictment and had discussed it with counsel; that he fully understood the charge and penalties which he was facing; that he had spoken to counsel concerning the U.S. Sentencing Guidelines and how they might be applied in his case; and that he understood his right to plead not guilty and proceed to trial if he so desired.

Most critically, and contrary to his current assertions, the petitioner swore that no one had forced, threatened or intimidated him, or had made him any promises of leniency in order to induce his guilty plea. The petitioner further swore that he was tendering his guilty plea because he, in fact, was guilty of the charge; that he understood that if his sentence was more severe than he had expected, he still would have been bound by his guilty plea and would not have had any right to withdraw such plea; and that he was satisfied with counsel's services. Consequently, the

Court found that the petitioner's guilty plea was knowingly and voluntarily tendered, and it conditionally accepted the plea. At the conclusion of that proceeding, the petitioner signed a copy of the "Entry And Acceptance Of Guilty Plea . . ." form, thereby memorializing all of the above answers to the Court's questions.

Next, on January 10, 2003, the government filed a "Motion For A Downward Departure . . ." pursuant to U.S. Sentencing Guidelines §5K1.1 and 18 U.S.C. §3553(e) based upon the petitioner's substantial assistance. In particular, the government's Motion for Downward Departure reported that the petitioner timely had provided substantial and detailed information concerning various offenses which had been committed by other persons. Consequently, the government asked the Court to depart down from Offense Level 39 to Level 36 which, when coupled with Criminal History Category III would yield a sentencing range of 235 to 293 months imprisonment.

On January 15, 2003, the petitioner filed a pro-se letter motion, complaining that counsel had taken too long to clear up a matter concerning some unresolved State charges which had been filed against him, she had failed to stay in contact with him, she had failed to answer his questions concerning his Plea Agreement and, notwithstanding the fact that he subsequently had appeared in Court and asked that his guilty plea be accepted, she had filed the Plea Agreement without his consent. The petitioner also complained that counsel had not prepared him for his debriefing by an ATF

agent.

Then, on February 27, 2003, the petitioner filed a Motion to substitute his court-appointed counsel with an attorney which his family had hired for him. After finding that there was no objection from appointed counsel, on March 25, 2003, the Court entered an Order granting the petitioner's Motion for a substitution.

Thereafter, on April 9, 2003, the Court held a Factual Basis & Sentencing Hearing in this matter. At the outset of that Hearing, the Court reviewed several of the matters which were addressed during the petitioner's Plea & Rule 11 Hearing. In response to the Court's questions, the petitioner advised that he freely and voluntarily had pled guilty to a charge of conspiracy to possess cocaine within 1,000 feet of a protected location; that he actually had committed the subject offense; that he understood the charge and penalties which he was facing; and, contrary to his then-recent complaints, that he believed he had been suitably advised and represented by counsel. Accordingly, the Court found, on the basis of the foregoing answers and the stipulation set forth in the Plea Agreement, that there was a factual basis to support the unconditional acceptance of the petitioner's guilty plea. The Court then unconditionally accepted the petitioner's guilty plea.

Next, the petitioner told the Court that he and counsel adequately had reviewed his Pre-Sentence Report, and so the Court

permitted counsel to address his objections to that document. At that time, defense counsel reported his agreement with the recommendation for a two-point enhancement for the offense having been committed within 1,000 feet of a protected area. However, defense counsel asserted that the petitioner should not have been subjected to a criminal history point for a particular conviction because the parties had agreed that the petitioner's brother actually had sustained that conviction in the petitioner's name.

Defense counsel also strenuously argued that there was no evidence that the petitioner personally had carried a gun or that he was aware of his co-conspirators' use of guns; therefore, counsel argued that the petitioner could not be subjected to the recommended two-point gun enhancement. In response, the government noted that there was an individual who reported seeing the petitioner with a gun; and that at least one co-conspirator with whom the petitioner admittedly had dealt was known to carry weapons and was found by police in possession of a weapon. Similarly, the government noted the conspiracy's reputation for violence, and the fact that numerous members of the conspiracy had been shot, thereby making such gun usage reasonably foreseeable to the petitioner. After considering the parties' arguments, the Court found that the enhancement properly could be imposed.

Defense counsel and the petitioner then addressed the Court. For his part, the petitioner apologized for his misconduct,

expressed his understanding that he was facing a lengthy sentence, thanked the prosecutor and agent for the departure recommendation and for their having given him a change to cooperate and help himself. The petitioner also explained how his 20-year battle with a drug addiction had led him to his criminal behavior.

Thereafter, the Court granted the government's modified Motion for Downward Departure, but went well below the recommended three offense level reduction to a six level reduction, and imposed a term of 131 months imprisonment. The Court's Judgment was filed on April 22, 2003.

The petitioner did not directly appeal his conviction or sentence. Instead, on April 9, 2004, the petitioner filed the instant Motion to Vacate, arguing that he had been subjected to ineffective assistance because his first defense attorney had failed to challenge the Indictment on the ground that he was merely a buyer of drugs, not a co-conspirator, and had induced him to plead guilty pursuant to the probation officer's erroneous representation that he would not receive a firearm enhancement. The petitioner also argues that his second attorney had failed to have the Court exclude from its calculations the amount of the drugs which he personally consumed. In addition, the petitioner alleges that the prosecutor engaged in misconduct by allowing him to believe that he would not be subjected to the firearm enhancement.

On July 12, 2004, the government responded to that Motion, arguing that the petitioner was not entitled to any relief. More particularly, the government argues that the record of the petitioner's criminal proceedings, including his own sworn admissions, tend to establish that he was guilty of conspiring with one or more of the persons named in his Indictment, not merely being a customer of those individuals; that his guilty plea to the conspiracy charge was freely and intelligently tendered, and was not the result of any promises of leniency; that his Plea Agreement expressly advised him that he would be subject to any type of adjustments which the Probation Office recommended and the Court found to be appropriate; and that despite his opportunities to have attempted to do so, the petitioner never sought to withdraw his guilty plea. Furthermore, the government argues that the Court's calculation of the Offense level was correct; and that the petitioner was not otherwise subjected to any violation of his constitutional rights. Therefore, the government asks the Court for summary judgment.

On August 4, 2004, the petitioner amended his Motion to Vacate to assert that it was the case agent, not the probation officer, who had promised that he would not receive a firearm enhancement.

Then, on October 25, 2004, the petitioner filed a "Traverse To Respondent's Answer To Petitioner's Motion To Vacate . . . ." By that document, the petitioner reiterates his modified contentions,

but further asserts that the case agent promised that he would "instruct the Assistant United States Attorney that there was to be no two-point enhancement for a gun. . . ."; and that replacement counsel also assured him that there would be no gun enhancement.

In addition to the foregoing, the petitioner argues, for the first time, that the imposition of the gun enhancement violates the rule announced in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) and its progeny. Consequently, the petitioner argues that this violation is an independent reason why his sentence must be vacated.

Thereafter, on November 22, 2004, the government filed an Amended Answer To Petitioner's Motion To Vacate . . . ." By that amended response, the government denies the petitioner's modified claim that the case agent had promised the petitioner leniency. Furthermore, the government reiterates the language in the Plea Agreement which put the petitioner on notice that an enhancement, such as the one imposed here, was possible.

Last, on December 13, 2004, the petitioner filed his so-called "Second Traverse To Petitioner's [sic] Amended Answer To Petitioner's Motion To Vacate." Such Second Traverse consists of both pages from the petitioner's first Traverse and additional pages on which he asks the Court to exclude the government's Amended Answer.

Based upon the foregoing, the petitioner's claims have been

fully briefed and rejoined.  Therefore, this matter is ripe for resolution.

## II. ANALYSIS

### 1. The petitioner's belated Apprendi claim is not cognizable in this proceeding.

Taking the claims out of order, the Court first turns to the petitioner's claim that his sentence was imposed in violation of the U.S. Supreme Court's decision in <u>Apprendi</u>.  Notwithstanding his apparent belief to the contrary, it already has been determined that the rule announced in the <u>Apprendi</u> line of cases may not be retroactively applied in collateral proceedings such as this. Indeed, the U.S. Supreme Court has flatly rejected the premise that the <u>Apprendi</u> ruling can be applied to cases such as this which are pending on collateral review.  <u>United States v. Summerlin</u>, 124 S.Ct. 2519, 2526 (2004).  Likewise, the Fourth Circuit has said the same.  <u>See</u> <u>United States v. Sanders</u>, 247 F.3d 139, 142 (4th Cir. 2001).  Therefore, this allegation must be rejected.

### 2. The petitioner was not subjected to ineffective assistance by his former attorneys.

With respect to the petitioner's claims of ineffective assistance of counsel, he must show that counsel's performance was constitutionally deficient to the extent it fell below an objective standard of reasonableness, <u>and</u> that he was prejudiced thereby. <u>Strickland v. Washington</u>, 466 U.S. 668, 687-91 (1984).  In making

this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; see also Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297-99 (4th Cir.), cert. denied, 474 U.S. 865 (1985); Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984); and Marzullo v. Maryland, 561 F.2d 540 (4th Cir. 1977), cert. denied, 435 U.S. 1011 (1978).

Furthermore, in considering the prejudice prong of the analysis, the Court must not grant relief solely because the petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998), cert. denied, 528 U.S. 855 (1999). Rather, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id., quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

Under these circumstances, the petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297, citing Hutchins, 724 F.2d at 1430-31. If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290, citing Strickland, 466 U.S. at 697. Moreover, a petitioner who alleges ineffective assistance following entry of a guilty plea has an even higher burden to meet.

See Hill v. Lockhart, 474 U.S. at 53-59; Fields, 956 F.2d at 1294-99; and Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir.), cert. denied, 488 U.S. 843 (1988). The Fourth Circuit described the petitioner's additional burden in a post-guilty plea claim of ineffective assistance of counsel as follows:

> When a [petitioner] challenges a conviction entered after a guilty plea, [the] "prejudice prong of the [Strickland] test is slightly modified. Such a defendant must show that there is a reasonable probability that, but for counsel's errors, <u>he would not have pleaded guilty and would have insisted on going to trial</u>."

Hooper, 845 F.2d at 475 (emphasis added); accord Hill v. Lockhart, 474 U.S. at 59; and Fields, 956 F.2d at 1297.

In evaluating post-guilty plea claims of ineffective assistance, statements previously made under oath, particularly those made during a Rule 11 proceeding which affirm an understanding of the proceedings and satisfaction with counsel, are deemed binding in the absence of "clear and convincing evidence to the contrary." Fields, 956 F.2d at 1299, citing Blackledge v. Allison, 431 U.S. 63, 74-75 (1977). Indeed, such statements "constitute a formidable barrier" to their subsequent attack. Blackledge, 431 U.S. at 73-74. In short, once a trial court conducts a Rule 11 colloquy and finds that the plea is being knowingly and voluntarily tendered, absent compelling reasons to the contrary, the validity of the plea and the petitioner's corresponding responses are deemed to be conclusively established. Via v. Superintendent, Powhatan Correctional Center,

643 F.2d 167 (4th Cir. 1981).

Equally significant here, a guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." United States v. Willis, 992 F.2 489, 490 (4th Cir. 1993). Thus, a defendant who pleads guilty may not challenge nonjurisdictional errors, including the deprivation of constitutional rights that occurred prior to the entry of his plea. Tollett v. Henderson, 411 U.S. 258 (1973); see also Hall v McKenzie, 575 F.2d 481 (4th Cir. 1978).

In the case at bar, the petitioner has alleged that his first attorney was ineffective for having failed to challenge the conspiracy charge on the ground that he was only a drug user, not a co-conspirator. However, other than his admitted drug abuse, the petitioner has failed to point to a single shred of evidence which would have supported such a challenge.

On the other hand, the Court is mindful of the statements in the Pre-Sentence Report which indicate that the petitioner supplied half ounce packages of crack to Ronald Benbow (a member of the conspiracy), beginning around 1997; that Benbow's transactions with the petitioner later grew to 2 ½ to 3 ounce packages over a 3 to 4 month period; and that Benbow subsequently purchased 9 ounce packages of crack from the petitioner over the course of a year.

The Report also indicates that the petitioner began selling ounce-sized packages of crack to Nakia Rivers (also a member of the

13

conspiracy) in late 1998; that the petitioner's supply of drugs mainly was coming from the Greensboro, North Carolina area; and that the petitioner had introduced Phillip Baker to a Caucasian woman who later brought "large amounts" of crack to Baker's home for the petitioner.

In addition, the Court is mindful of the petitioner's allocution, during which he admitted his guilt, expressed his understanding that he was "looking at a lengthy sentence . . . because of the wrong that [he had] done," and apologized for his behavior. The Court also is aware that the petitioner tendered his guilty plea <u>after</u> the time during which counsel would have been expected to make a challenge to the subject charge, thereby essentially waiving his right even to raise this claim. Consequently, on this record, the petitioner has failed to establish that he is entitled to any relief on his claim that counsel was deficient for failing to challenge the conspiracy charge.

Next, the petitioner has alleged that his other defense attorney was ineffective at sentencing for having failed to seek the exclusion from the Court's calculation of his Offense Level the drugs which he personally had consumed. That claim, likewise, must be flatly rejected.

Indeed, under the terms of the petitioner's Plea Agreement, he expressly stipulated to the amount of cocaine base upon which his sentence was to have been calculated, <u>i.e.</u>, "in excess of 1.5

kilograms." Accordingly, as defense counsel explained in his Affidavit, that stipulation prevented counsel from attempting to argue that the petitioner should have been held accountable for some lesser amount of crack. As counsel correctly noted, had he attempted to challenge the stipulated amount, the government likely would have argued that he was in breach of the parties' Agreement, thereby exposing the petitioner to a risk of being sentenced without any of the benefits--such as the chance for a downward departure-- that the Agreement offered him. Therefore, the Court finds that this claim is baseless.

The petitioner also has alleged that his second attorney was ineffective because he expressly told the petitioner that he would not be subjected to a gun enhancement. The petitioner contends that counsel made him that promise after the petitioner threatened to "withdraw the plea and go to trial" in response to the Pre-Sentence Report's recommendation for the 2-point gun enhancement. The petitioner's assertions, however, are riddled with problems.

First, turning to the Plea Agreement, as has been noted, that document expressly left the determination of enhancements to the determination of the Court upon the recommendation of the Probation Office. Moreover, the Plea Agreement expressly warned that there were "no agreements, representations, or understandings between the parties in this case, other than those that [were] explicitly set forth in th[at] Plea Agreement and none w[ould] be entered into

15

unless executed in writing and signed by all the parties" (emphasis added). Therefore, inasmuch as the only agreement which can be independently corroborated appears to have been followed, the petitioner will be hard-pressed to establish that counsel was deficient in this regard.

Second, even after it became clear during the petitioner's Sentencing Hearing that the Court, in fact, was going to impose the gun enhancement, the petitioner still did not, contrary to his alleged threat, seek to withdraw his guilty plea and request a jury trial. Nor did the petitioner even hint at or otherwise mention to the Court the existence of any alleged agreement which he supposedly had reached with the government via his attorney and the case agent. On the contrary, the petitioner thanked the allegedly reneging parties for having given him an opportunity to help himself. Such representations and sworn statements by the petitioner should not now be set aside merely on the basis of the petitioner's belated, wholly self-serving assertions to the contrary.

Third, the petitioner initially claimed that it was a probation officer who had told him and his attorney that he would not face a gun enhancement. However, once the government filed its response, which attached that Officer's Affidavit--by which she denied having even discussed that matter with the petitioner--he amended his allegation to claim that the case agent had made the subject promise. Then, when the government filed an Amended Answer,

**16**

which attached the agent's Affidavit--by which he also denied having made any such promise to the petitioner--the petitioner asked the Court to disregard the government's amended response as being time-barred. Thus, the petitioner's own report of these matters is inconsistent at best, or fabricated at worst.

Fourth, the record reflects that defense counsel both objected to the recommendation for the enhancement in the Pre-Sentence Report and strenuously argued against the imposition of that enhancement during the Sentencing Hearing, taking issue with the evidentiary support for the enhancement. In light of such zealous advocacy this Court is confident that, had there actually been a favorable promise concerning the enhancement, defense counsel would have had no reason not to expose that matter for the Court.

Thus, in consideration of the foregoing matters the Court finds that the petitioner cannot establish any deficiency on the part of counsel. To put it simply, the petitioner has failed to point to anything in the record which establishes that any such promise of leniency actually was made to him by anyone.

### 3. **The petitioner's claim of prosecutorial misconduct also is feckless**.

Last, the petitioner alleges that his constitutional rights were violated by the prosecutor's failure to honor the case agent's promise that the gun enhancement would not be applied. However, for the reasons which were discussed in connection with this allegation as set forth against defense counsel, the Court finds that the

petitioner's belated, self-serving and evolving claim must fail. To put it simply, "[w]hile the government must be held to promises it made, it will not be bound by those it did not make," United States v. Fentress, 792 F.2d 461, 464-65 (4th Cir. 1986).

### III. CONCLUSION

The petitioner's claims against his former attorneys and the prosecutor all are entirely foreclosed by the record evidence, some of which evidence includes the petitioner's own sworn testimony and other contemporaneous statements which undermine these post-Judgment claims. Therefore, the Court finds that the petitioner's claims must be rejected, and his Motion to Vacate must be denied and dismissed.

### IV. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The government's Motion for Summary Judgment is **GRANTED;** and

2. The petitioner's Motion to Vacate is **DENIED and DISMISSED.**

The Clerk shall send copies of this Order to the petitioner and to the United States Attorney.

**SO ORDERED.**

Signed: August 22, 2007

Richard L. Voorhees
United States District Judge